CINCINNATI BAR ASSOCIATION *v.* COOGAN.

(D. D. No. 99—Decided March 4, 1970.)

*Mr. John S. Wirthlin* and *Mr. Robert L. Davis*, for relator.

*Mr. Otto F. Putnick*, for respondent.

*Per Curiam.* The relator, the Cincinnati Bar Association, filed the complaint in this matter on October 9, 1967.

The respondent, James H. Coogan, is 32 years old and was admitted to the Ohio Bar in 1961.

The respondent's first answer to the complaint raised the question of mental illness as a defense and, therefore, a hearing upon the complaint was delayed.

A doctor examined the respondent and made a report, dated April 29, 1968, as follows:

"It is not possible on the basis of this examination to make a diagnosis of any mental illness which would be of significance under Section 5122.01(A), Revised Code. * * * at present, Mr. Coogan is not disabled by illness to an extent of making him incapable of his regular work."

On February 19, 1969, a letter was received from Dr. Charles D. Feuss, a psychiatrist, who was treating the respondent. That letter concluded as follows:

"There is no psychiatric reason for Mr. Coogan not to resume the practice of law."

A hearing was held on July 8, 1969.

The Board of Commissioners on Grievances and Discipline found that the testimony presented substantiated the first complaint. This complaint alleged that the respondent had undertaken to represent one Edward Hallas, who was a defendant in an eviction proceeding. The board found that the defendant had a valid one-year lease and probably should not have been evicted.

The respondent and counsel for the plaintiff in the eviction proceeding agreed to dismiss the case. However, plaintiff, acting on his own, refused to dismiss the case and the judge overruled the defendant's motion to dismiss the case.

The matter was heard by the court on the testimony of the plaintiff and, in the absence of the defendant and defendant's counsel, judgment was rendered for the plaintiff.

When this came to the attention of the defendant Hallas, he contacted the respondent and was assured that the respondent had filed a motion to set aside the judgment and that the case would be heard on its merits, with all parties present. Thereafter the defendant was advised by the Municipal Court that no motion for a new trial, or to set aside the judgment, had ever been filed by the respondent, that the judgment in the eviction matter was final and that no appeal had been filed by the respondent. The defendant was forcibly removed from his residence and compelled to seek other shelter and to place his children in different schools. The defendant made every possible effort to reach respondent but failed because respondent refused to meet with defendant, refused to return defendant's telephone calls, refused to answer any letters sent to him and refused to take any action to represent his client, the defendant.

The board concluded that "* * * it was clear that respondent neglected or failed to do anything to correct the situation, failed to adequately represent his client's interest, failed or refused to meet with his client, to answer his

calls and letters and completely ignored his client's plight. * * * we find that respondent did violate Canon Number 21 of the Canons of Professional Ethics.''

The board found that the testimony substantiated the second charge. The board's findings and the testimony with regard to the second complaint is reported as follows:

''* * * Respondent acted as attorney for the guardian in the Estate of Clara Davis. The estate consisted of assets with an approximate value of one hundred eighty-five thousand dollars ($185,000). Twenty-eight (28) days after the appointment of the guardian and five (5) days after the filing of the inventory, the respondent, on behalf of the guardian and himself, filed an application for authority to pay guardian's fees and attorney fees. An entry was made authorizing guardian's fees in the amount of seven thousand five hundred dollars ($7,500) and attorney fees of the same amount. The guardian and attorney received fees of five thousand dollars ($5,000). The respondent, in his answer, alleged that the court referee set the fee. (The referee, one Lawrence W. Hunt, had died several months before this hearing.) However, an affidavit of Mr. Hunt, taken in January, 1967, indicated that respondent had, on September 7, 1966, presented to him an application and entry for the payment of a guardian's fee and attorney's fee. Among other things, the affidavit related that respondent had stated to Hunt that the ward, her granddaughter and the granddaughter's husband had agreed that the guardian's fee and the attorney's fee should be seven thousand five hundred dollars ($7,500) each. The affidavit further related that, in reliance on respondent's representations, the application and entry were approved for fees of seven thousand five hundred dollars ($7,500) for the guardian and the seven thousand five hundred dollars ($7,500) for the attorney for services thus far rendered and to be rendered in the estate.''

Although there may have been a dispute as to who recommended that the guardian's and attorney's fees be paid,

there is no dispute, in respondent's answer, the testimony offered and the records of the Probate Court that the original entry regarding fees was set aside, that substantially lower fees were approved by the court and that the guardian was ordered to reimburse the estate for the excess fees paid over those allowed. The facts are further undisputed, by answer or the testimony, that respondent has neglected to abide by the order of the court, has taken no steps whatsoever to contest the order of the court, and has allowed his client, the guardian, to personally reimburse the estate with all the fees paid the guardian and an additional two thousand dollars ($2,000) from guardian's personal funds. The guardian, in effect, has been required to reimburse the estate two thousand five hundred dollars ($2,500) of his own fee and four thousand five hundred dollars ($4,500) of the fee paid to and retained by the respondent. In addition, the respondent has refused and/or ignored all requests by the guardian and/or the court to reimburse the guardian and/or the estate for these excessive fees paid respondent; has refused to talk to the guardian, the court or anyone else and has avoided all efforts to contact respondent.

The testimony and evidence further showed that the guardian has acted as a guardian on only one (1) previous occasion, was relatively unfamiliar with guardianship legal matters, had been requested by the next of kin to act as guardian and had relied completely on the advice and counsel of the respondent in matters relating to the guardianship, including the matter of fees. The guardian further responded to and obeyed the subsequent orders of the court, has repaid to the estate all of the monies paid to him plus two thousand dollars ($2,000) of his personal funds.

The Board of Commissioners on Grievances and Discipline found that the respondent violated Canon 11 in that, for his own personal benefit and gain, he abused the confidence imposed in him by his client. The board found further that the respondent violated Canons 21 and 32.

The recommendation of the Board of Commissioners on Grievances and Discipline is:

"* * * the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio recommends that the respondent, James H. Coogan, be suspended indefinitely from the practice of law pursuant to Section 6(b) of Rule XVIII of the Disciplinary Procedure of the Supreme Court of Ohio."

Respondent's objections to the recommendation of the board are overruled, the recommendation of the board is confirmed and the respondent is suspended from the practice of law for an indefinite period.

*Report confirmed and judgment accordingly.*

TAFT, C. J., O'Neill, Schneider, Herbert, Duncan and CORRIGAN, JJ., concur.

MATTHIAS, J., not participating.